IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARCUS ROSSER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-234 (MN) |
| | ) | |
| ROBERT MAY, Warden, and | ) | |
| ATTORNEY GENERAL OF THE STATE | ) | |
| OF DELAWARE, | ) | |
| | ) | |
| Defendant. | ) | |

## **<u>MEMORANDUM OPINION</u>**


Marcus J. Rosser – *Pro se* Petitioner.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware Department of Justice, Wilmington, DE – Attorney for Respondents.


February 22, 2023
Wilmington, Delaware

NOREIKA, U.S. DISTRICT JUDGE

Pending before the Court is a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") filed by Petitioner Marcus J. Rosser ("Petitioner").  (D.I. 2).  The State filed an Answer in opposition, to which Petitioner filed a Reply.  (D.I. 9; D.I. 16).  For the reasons discussed, the Court will deny the Petition.

## I.  BACKGROUND

> [A]round 8:00 p.m. on July 13, 2014, Ronald Maddrey encountered Rosser at a convenience store in New Castle, Delaware.  [Petitioner] was driving a silver SUV.  Maddrey agreed to sell marijuana to [Petitioner] at a different location.  Maddrey followed [Petitioner] in his car to a nearby apartment complex.  As Maddrey approached [Petitioner's] SUV, [Petitioner] pulled out a gun and shot Maddrey in the arm.  After being shot, Maddrey ran behind an apartment building and returned to his car only after [Petitioner] drove away.  Maddrey went to the hospital for treatment.  During a police interview, Maddrey identified [Petitioner] as his assailant.
>
> Later that same evening, three people, including Tyler Buchanan, were talking outside of a different New Castle convenience store.  They encountered a man in an SUV who pulled a gun on Buchanan as the two were walking toward each other.  The man with the gun robbed Buchanan of a pack of cigarettes.  The police were notified.  Later, in the early morning hours of July 14, 2014, the police showed Buchanan a photographic array.  Buchanan identified [Petitioner] as the man who robbed him at gunpoint.
>
> Shortly after the Buchanan robbery, the police conducted a motor vehicle stop of [Petitioner]'s SUV.  During the course of a search of the SUV, the police seized a revolver with one bullet missing.

*Rosser v. State*, 135 A.3d 764 (Table), 2016 WL 1436604, at *1 (Del. Apr. 5, 2016).

After his arrest on July 14, 2014, a New Castle County grand jury indicted Petitioner on first degree assault, two counts of possession of a firearm during the commission of a felony ("PFDCF"), carrying a concealed deadly weapon ("CCDW"), two counts of endangering the welfare of a child, first degree robbery, aggravated possession of a firearm by a person prohibited ("APFBPP") (for negligently causing serious physical injury with the firearm), resisting arrest,

and offensive touching of a law enforcement office.  (D.I. 10-1 at Entry Nos. 1, 12).  Prior to trial, Petitioner stipulated that he was a person prohibited from possessing a firearm.  (D.I. 10-1 at Entry No. 54).  Following the close of the State's case, Petitioner moved for a judgment of acquittal on the charges of resisting arrest, offensive touching, first degree assault, and APFBPP.  (D.I. 10-3 at 42).  The Superior Court granted the motion in part and entered a judgment of acquittal on the charges of resisting arrest and offensive touching, and denied the motion as to the assault charge.  (D.I. 10-3 at 41-42; D.I. 10-4 at 18-19, 21).  The Superior Court also entered a judgment of acquittal on the two counts of endangering the welfare of a child, which was raised *sua sponte* by the court.  (D.I. 10-4 at 21).

On the final day of trial, the State notified the parties that it had received evidence of contact between Petitioner's family and one of the jurors.  The State obtained Petitioner's prison phone call record, which illustrated the improper communications with the juror.  The juror was excused and the remainder of the jury was individually *voir dired* to ensure the issue was isolated to one juror.  (D.I. 10-4 at 2-12).

On May 4, 2015, the jury found Petitioner guilty of first degree assault, first degree robbery, CCDW, APFBPP, and two counts of PFDCF.  (D.I. 10-1 at Entry No. 62; D.I. 10-6 at 9).  The Superior Court sentenced Petitioner on August 21, 2015 to a total Level V term of forty years, to be suspended after eighteen years for decreasing levels of supervision.  (*See* D.I. 10-6 at 9).  The minimum mandatory Level V time was seventeen years.  The Superior Court imposed an additional year beyond the minimum mandatory based on Petitioner's actions during the trial, which appeared to have been an attempt to tamper with a juror.  (D.I. 10-17 at 52-55).

Petitioner appealed.  His attorney filed a Rule 26(c) Non-Merit Brief and moved to withdraw.  (D.I. 10-6; *see Rosser*, 2016 WL 1436604, at *1, *3).  Petitioner submitted points he

wished the Delaware Supreme Court to consider. (D.I. 10-6 at 10-11). The Delaware Supreme Court affirmed Petitioner's convictions and sentence on April 5, 2016. (D.I. 10-10; *see Rosser*, 2016 WL 1436604, at *2-3).

On June 20, 2016, Petitioner filed a pro se motion for reduction of sentence pursuant to Delaware Superior Court Criminal Rule 35(b). (D.I. 10-17 at Entry No. 77; *see State v. Rosser*, 2016 WL 4196815 (Del. Super. Ct. Aug. 9, 2016)). The Superior Court denied the motion as untimely on August 9, 2016. *See Rosser*, 2016 WL 4196815, at *1.

On January 3, 2017, Petitioner field a pro se motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") and a motion for the appointment of counsel. (D.I. 10-17 at 56-59). The Superior Court granted the motion to appoint counsel and, on November 7, 2017, appointed postconviction counsel filed a motion to withdraw on the ground that there were "no meritorious issues of law to be raised." (D.I. 10-17 at 80). Petitioner opposed postconviction counsel's motion and presented his own claims for relief. (D.I. 10-1 at Entry No. 100; *see State v. Rosser*, 2018 WL 6432985, at *3 (Del. Super. Ct. Nov. 26, 2018)). Trial counsel filed a Rule 61 affidavit, and the State filed an Answer. (D.I. 10-12; D.I. 10-17 at 114-124). On November 26, 2018, a Superior Court Commissioner issued a Report and Recommendation that Petitioner's Rule 61 motion be denied. (D.I. 10-13; *see Rosser*, 2018 WL 6432985, at *13). On December 20, 2018, the Superior Court adopted the Commissioner's Report and Recommendation, granted postconviction counsel's motion to withdraw, and denied Petitioner's Rule 61 motion. *See State v. Rosser*, 2018 WL 6721365, at *2 (Del. Super. Ct. Dec. 20, 2018). The Delaware Supreme Court affirmed that decision on October 28, 2019. *See Rosser v. State*, 221 A.3d 915 (Table), 2019 WL 5576888, at *4 (Del. Oct. 28, 2019).

II.     **GOVERNING LEGAL PRINCIPLES**

A.     **The Antiterrorism and Effective Death Penalty Act of 1996**

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

B.     **Exhaustion and Procedural Default**

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i)  there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused, and the claims treated as "technically exhausted", if state procedural rules preclude him from seeking further relief in state courts. *See Coleman v. Thompson*, 501 U.S. 722, 732, 750-51 (1991) (such claims "meet[] the technical requirements for exhaustion" because state remedies are no longer available); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006). Although treated as technically exhausted, such claims are procedurally defaulted for federal habeas purposes. *See Coleman*, 501 U.S. at 749 (1991); *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000). Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors "worked to his actual

and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004); *see also Reeves v. Fayette SCI*, 897 F.3d 154, 157 (3d Cir. 2018).

### C.   Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits,[1] the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the state court

---

[1]    A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

proceeding.  28 U.S.C. § 2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).  The deferential standard of § 2254(d) applies even when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied.  *See Harrington v. Richter*, 562 U.S. 86, 98-101 (2011).  As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Id.* at 99.

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  *Williams*, 529 U.S. at 413.  The mere failure to cite Supreme Court precedent does not require a finding that the decision is contrary to clearly established federal law. *See Early v. Packer*, 537 U.S. 3, 8 (2002).  For instance, a decision may comport with clearly established federal law even if the decision does not demonstrate an awareness of relevant Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Id*.  In turn, an "unreasonable application" of clearly established federal law occurs when a state court "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of a prisoner's case."  *Williams*, 529 U.S. at 413; *see also White v. Woodall*, 572 U.S. 415, 426 (2014).

When performing an inquiry under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct.  *See* 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210.  This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary.  *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341

(2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). State court factual determinations are not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).

Conversely, if the state's highest court did not adjudicate the merits of a properly presented claim, the claim is reviewed *de novo* instead of under § 2254(d)'s deferential standard. *See Breakiron v. Horn,* 642 F.3d 126, 131 (3d Cir. 2011); *Lewis v. Horn*, 581 F.3d 92, 100 (3d Cir. 2009). *De novo* review means that the Court "must exercise its independent judgment when deciding both questions of constitutional law and mixed constitutional questions." *Williams v. Taylor*, 529 U.S. 362, 400 (2000) (Justice O'Connor concurring). "Regardless of whether a state court reaches the merits of a claim, a federal habeas court must afford a state court's factual findings a presumption of correctness and . . . the presumption applies to factual determinations of state trial and appellate courts." *Lewis*, 581 F.3d at 100 (cleaned up).

## III.   **DISCUSSION**

Petitioner's timely filed Petition asserts the following four Claims that defense counsel provided ineffective assistance by: (1) failing to "file a motion to sever the charge of possession by a person prohibited" (D.I. 2 at 5); (2) failing to "properly investigate the case, file a motion for severance, and help develop a defense" (D.I. 2 at 7); (3) failing to "request a missing evidence jury instruction" (D.I. 2 at 8); and (4) failing to "explain[] properly the plea agreement offered and . . . object to the extra year during sentencing" (D.I. 2 at 10).

### A.   **Claim Two (Severance): Procedurally Barred**

Petitioner presented Claim Two's argument that defense counsel failed to file a motion to sever the charges related to the Maddrey and Buchanan incidents in his Rule 61 motion, but did not present the argument to the Delaware Supreme Court on post-conviction appeal.

Consequently, the Delaware Supreme Court found the argument was waived.  *See Rosser*, 2019 WL 5576888, at *2 (*citing Murphy v. State*, 632 A.2d 1150 (Del. 1993)); D.I. 10-19.  While the Delaware Supreme Court's finding of waiver constitutes an independent and adequate state procedural rule for procedural default purposes, Petitioner's failure to present the IATC/severance argument to the Delaware Supreme Court on post-conviction appeal means that he did not exhaust state remedies.

At this juncture, any attempt by Petitioner to raise Claim Two's IATC/severance argument in a Rule 61 motion would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1) and repetitive under Rule 61(i)(2).  Since there is no indication that Rule 61(d)(2) and (i)(5)'s exceptions to the bars in Rules 61(i)(1) and 61(i)(2) apply in this case,[2] any attempt to exhaust state remedies would be futile.  Given this futility, the Court must treat Claim Two's IATC/severance argument as technically exhausted but procedurally defaulted.  Therefore, the Court cannot review the merits of the instant Claim absent a showing of cause and prejudice, or that a miscarriage of justice will result absent such review.

Petitioner does not provide any cause for his failure to present the instant IATC/severance argument to the Delaware Supreme Court.  (*See* D.I. 2 at 7-8; D.I. 16; D.I. 17).  The absence of cause eliminates the need to address the issue of prejudice.  Nevertheless, Petitioner cannot show

---

[2]    Delaware Superior Court Criminal Rule 61(d)(2) and (i)(5) provide that the procedural bars to relief in Rule 61(i)(1), (2), (3), and (4) do not apply to a claim that the court lacked jurisdiction or if the petitioner pleads with particularity either that (1) new evidence exists that creates a strong inference that he is actually innocent or (2) a new rule of constitutional law, made retroactive on collateral review, applies to his case and renders his conviction invalid.  *See* Del. Super. Ct. Cr. R. 61(d)(2) and (i)(5).  Petitioner does not allege a valid claim of actual innocence, and he does not allege a lack of jurisdiction or that a new rule of constitutional law applies to Claim Two's IATC/severance argument.

prejudice because, on direct appeal, the Delaware Supreme Court found no plain error in the joinder of the offenses at trial. *See Rosser*, 2016 WL 1436604, at *2.

The miscarriage of justice exception to the procedural default doctrine also does not excuse Petitioner's default, because he has not alleged any facts to establish his actual innocence or presented any new reliable evidence of his actual innocence. For these reasons, the Court will dismiss the IATC/severance argument in Claim Two as procedurally barred.

**B.**     **Claim Four: Procedurally Barred**

In Claim Four, Petitioner contends that trial counsel provided ineffective assistance by failing to "explain [] properly the plea agreement offered and . . . object to the extra year during sentencing." (D.I. 2 at 10). More specifically, he asserts that he "was always under the impression that he turned down a plea agreement that was for ten years" until he received a copy of the agreement from the prothonotary's office and "realized after studying the agreement that it was in fact not a plea for ten years but five years after time was suspended." (D.I. 16 at 1). Petitioner concedes that he did not raise the IATC/plea agreement issue to the Delaware state courts, but asserts he "was not aware that the plea was for five years until [he] received a copy from the prothonotary office on January 31, 2020." (D.I. 2 at 10). He also states that he "raised the issue of being sentenced to an extra year in the form of a Rule 35 motion, which is the proper vehicle for such a request." (D.I. 2 at 10).

While Petitioner did file a Rule 35 motion to reduce is sentence for the one year the Superior Court imposed based on Petitioner's attempt to influence a juror, that motion did not contain (and could not have properly asserted) a related ineffective assistance of trial counsel claim. Nor did he raise an IATC claim based on the extra one year sentence in his Rule 61 motion. Thus, Petitioner did not exhaust state remedies for either argument in Claim Four.

At this point in time, any attempt by Petitioner to pursue relief for the extra sentence argument via a new Rule 35 motion would be barred as repetitive, and any attempt to include both of these arguments in a new Rule 61 motion would be barred under Rule 61(i)(1) as time-barred and 61(i)(2) as successive. *See* Del. Super. Ct. Crim R. 35(b), 61(i)(2). Since there is no indication that Rule 61(d)(2) and (i)(5)'s exceptions to the bars in Rules 61(i)(1) and 61(i)(2) apply in this case, any attempt to exhaust state remedies would be futile. Therefore, the two arguments in Claim Four are technically exhausted but procedurally defaulted.

Petitioner does not provide any reason for his default of the IATC/sentence argument. In turn, Petitioner's contention that he only learned in 2020 of the inconsistency between his recollection of what trial counsel told him about the plea offer and the alleged actual terms of the plea offer when the prothonotary sent him a copy of the plea agreement does not constitute cause. Petitioner asserts that he would not have turned down a plea offer with a five year sentence recommendation (D.I. 16 at 1), yet acknowledges that he signed the rejected plea agreement containing a five year sentence recommendation without realizing it. (D.I. 2 at 10). Giving Petitioner the benefit of the doubt with respect to his current contention that trial counsel did not properly explain the plea offer that he rejected, he still has not explained why he never asked trial counsel about the alleged five year sentence recommendation contained in the rejected agreement that contains his signature if, as he asserts, trial counsel told him the offer was for ten years.[3] In

---

[3]    At a minimum, Petitioner's version of events indicates that he may not have focused on the actual plea offer when it was presented to him. The following background information provided by trial counsel in his Rule 61 affidavit supports this interpretation:

> Based upon my recollection, I met with the client shortly before trial to discuss a final case review plea offer. During this consultation, it was clear that he had no interest in the plea offer. [Petitioner's] demeanor presented as one in good spirits, and unconcerned about the pending trial. [Petitioner's] demeanor was so unusual, based upon my experience with

other words, Petitioner's alleged failure to "learn" about the terms of his rejected plea offer until 2020 was not due to an external impediment beyond his control.

In the absence of cause, the Court need not address the issue of prejudice. Additionally, Petitioner's failure to provide new reliable evidence of his actual innocence precludes the application of the miscarriage of justice doctrine as a method for excusing his default. For these reasons, the Court will deny Claim Four as procedurally barred.

### C.  Claims One, Two (failed to investigate or develop justification defense), and Three:  § 2254(d)

Petitioner presented Claims One, Two (failure to investigate and develop a defense), and Three to the Delaware state courts in his Rule 61 proceeding, and those courts denied the Claims as meritless. Therefore, Petitioner will only be entitled to relief on the instant three Claims if the Delaware state court decisions were either contrary to, or an unreasonable application of, clearly established federal law.

As a general rule, ineffective assistance of counsel claims are reviewed pursuant to the two-pronged standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the first *Strickland* prong, the petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. The second *Strickland* prong requires the petitioner to demonstrate "there is a reasonable probability that, but

---

representing defendants charged this serious felony offenses, that I asked him "do you know something I don't." [Petitioner] responded by smiling, and shaking his head in the affirmative. [Petitioner's] demeanor and response led me to believe that either Maddrey, who was incarcerated, was not going to cooperate, or Buchanan, who was at liberty, wasn't going to appear for trial. [. . .] [Petitioner] never admitted this to me.

(D.I. 10-12 at 2-3).

for counsel's error the result would have been different." *Id*. at 687–96.  A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id*. at 688.  A petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987).  A court can choose to address the prejudice prong before the deficient performance prong, and reject an ineffective assistance of counsel claim solely on the ground that the defendant was not prejudiced.  *See Strickland,* 466 U.S. at 698.  Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.

With respect to the first prong of the § 2254(d)(1) inquiry, a "state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court precedent, or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that reached by the Supreme Court."  *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013).  In this case, the Delaware Supreme Court's decision was not contrary to clearly established federal law because it correctly identified the *Strickland* standard applicable to the instant three Claims.  *See Fahy v. Horn,* 516 F.3d 169, 196 (3d Cir.2008) (Pennsylvania Supreme Court's decision was not "contrary to" clearly established federal law because it appropriately relied on its own state court cases, which articulated the proper standard derived from Supreme Court precedent); *Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause"); *see Rosser*, 2019 WL 5576888, at *2.

The Court must also determine if the Delaware Supreme Court reasonably applied the *Strickland* standard to the facts of Petitioner's case.  When performing the second prong of the § 2254(d)(1) inquiry, the Court must review the Delaware state court's decision with respect to Petitioner's ineffective assistance of counsel claim through a "doubly deferential" lens.[4]  *See Richter*, 562 U.S. at 105.  Notably, when § 2254(d)(1) applies, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id*.  When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable."  *Id*.  And finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision."  *Id*. at 101.

### 1.   **Claim One**

Petitioner asserts that trial counsel should have moved to sever the aggravated possession of a firearm by a person prohibited charge.[5]  (D.I. 2 at 5)  In his Rule 61 affidavit, trial counsel provided the following explanation as to why he did not file a severance motion:

---

[4]      As explained by the *Richter* Court,

> [t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

*Richter*, 562 U.S. at 105 (internal citations omitted).

[5]      On direct appeal, Petitioner argued that he was prejudiced by the joinder of the APFBPP charge with his other charges.  *See Rosser*, 2016 WL 1436604, at *3.  The Delaware

> [T]here would be no merit in severing the cases because the facts
> and evidence supporting [Petitioner's] arrest were inextricably
> intertwined.   The victims both identified [Petitioner], the crime
> scenes were geographically close, the crimes were both committed
> within hours of each offense, the victims' description of the vehicle
> driven by the suspect and gun used were consistent, and [Petitioner]
> was in possession of a firearm when apprehended driving the
> described vehicles.   Based upon judicial economy principles, I felt
> there was no merit in filing a severance motion.

(D.I. 10-12 at 2).   Trial counsel also believed that a single trial would be the best strategy to

maximize the possibility that a State witness might not appear for trial.   (D.I. 10 at 10-12 at 2-3).

More specifically, trial counsel explained:

> I do recall discussing with [Petitioner] that, from a trial strategy
> standpoint, if the victims were going to cause problems it would be
> in his best interest to go to trial on the same date.   The rational for
> this is that, I could move to dismiss the Buchanan charges if he failed
> to appear.   If the Buchanan charges were dismissed, [Petitioner]
> would avoid facing the robbery first degree and related firearm
> charges that each carried a three-year minimum/mandatory
> sentence.   In contrast, if the Court granted a defense severance
> motion, the State would have two separate and distinct opportunities
> to prosecute [Petitioner].

(D.I. 10-12 at 3)

In his Rule 61 proceeding, the Superior Court rejected Petitioner's argument that trial

counsel was ineffective for not moving to sever the APFBPP charge from the other charges,

explaining:

> [T]rial counsel believed it would be in [Petitioner's] best interest to
> move forward on all the charges at the same time if the State's
> witnesses were not going to be cooperative, as this would deny the
> State multiple opportunities to secure witnesses and obtain a
> conviction.   Trial counsel wanted all claims presented together at
> one time, so as not to provide the State with another opportunity to
> prosecute [Petitioner] on any of the charges.

---

Supreme Court held that Petitioner waived this argument because he stipulated that he was
a person prohibited from possessing a firearm.  *Id.*

> That the witnesses cooperated and this strategy was ultimately unsuccessful does not render trial counsel's tactical decision unreasonable.  As trial counsel acknowledged, he discussed his trial strategy with [Petitioner], and [Petitioner] agreed to move forward with the charge on the basis of their intended strategy.
>
> *                    *                    *                    *
>
> There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.  Consequently, defense counsel must be given wide latitude in making tactical decisions.  Where, as here, the jury is not informed of the defendant's criminal history or the nature of the past felony conviction, and trial counsel strategically declined to request severance of the PFBPP charge, neither prong of *Strickland* is met.  That the decision ultimately proved to be unsuccessful does not make it unreasonable.  This claim is without merit.

*Rosser*, 2018 WL 6432985, at *5-6.

The Delaware Supreme Court affirmed that decision, opining:

> [J]oinder of person-prohibited charges with other charges is appropriate when the charges are based on the same act or transaction[,] constituting parts of a common scheme or plan.
>
> Joinder was appropriate here, and [Petitioner] therefore cannot show that it was objectively unreasonable for trial counsel not to seek severance.  [Petitioner] was charged with Aggravated Possession of a Firearm by a Person Prohibited, which required the jury to conclude that, while [Petitioner] possessed the firearm, he caused serious physical injury to Maddrey.  The APFBPP charge was therefore part of the "same act or transaction" as the other charges arising from the Maddrey incident, and counsel did not act unreasonably by not seeking severance.  Moreover, in these circumstances, there is no reason to believe that severance of the charges would have resulted in a different outcome.

*Rosser*, 2019 WL 5576888, at *3.

It is well-settled that an attorney does not provide ineffective assistance by failing to assert meritless arguments.  *See Ross v. District Attorney of the County of Allegheny*, 672 F.3d 198, 211 n.9 (3d Cir.2012); *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir.1999).  After considering

16

the Delaware Supreme Court's holding that the joinder of the charges in this case was proper, trial counsel's conclusion that a severance motion would not have succeeded, and trial counsel's strategic reason for not wanting two separate trials, the Court concludes that the Delaware Supreme Court did not unreasonably apply *Strickland* in denying Claim One. Therefore, the Court will deny Claim One for failing to satisfy the standard in § 2254(d).

> ### 2.   **Claim Two**

In Claim Two, Petitioner contends that trial counsel did not "properly investigate the case" because he did not independently interview witnesses, including Mr. Nas, who could have provided a basis for a justification defense. (D.I. 2 at 7). According to Petitioner, Mr. Nas's testimony would have directly contradicted Maddrey's testimony. The Delaware Supreme Court rejected Petitioner's argument and found as follows:

> "Nas," [was] an acquaintance of [Petitioner's] and Maddrey's who interacted with [Petitioner] and Maddrey at the 7-Eleven store shortly before the Maddrey shooting. In his affidavit in response to [Petitioner's] postconviction motion, trial counsel indicated that in his view the evidence did not support a self-defense claim, because [Petitioner] never admitted shooting Maddrey and there was no evidence that Maddrey was the aggressor in the confrontation or that he possessed a weapon. In support of his claim of ineffective assistance, [Petitioner] has submitted a transcript of an interview that a defense investigator conducted with Nas. Nas told the defense investigator that he was speaking to Maddrey at the 7-Eleven store when [Petitioner] arrived. Nas stated that [Petitioner] was acting erratically, and that [Petitioner] referred to Maddrey as "the enemy" and threatened to "shoot all y'all up" before speeding off in his vehicle. Nas also stated that he called [Petitioner] later to check on him and [Petitioner] said "Man, I think I messed up. I messed up." The Nas interview is not exculpatory, and therefore does not support a conclusion that trial counsel's determination not to pursue a justification defense fell below an objective standard of reasonableness, or that [Petitioner] was prejudiced by that determination.

*Rosser*, 2019 WL 5576888, at *3. Given Petitioner's failure to provide clear and convincing evidence to the contrary, the Court defers to the Delaware Supreme Court's factual determination

that the Nas interview was not exculpatory.  *See* § 2254(e)(1).  The Court has also reviewed the transcript of the investigator's interview of Mr. Nas and finds that it supports the Delaware Supreme Court's factual determination.  (D.I. 10-15 at 20-31).  Given these circumstances, the Court concludes that trial counsel did not perform deficiently by not personally interviewing Nas, nor has Petitioner demonstrated that he suffered any prejudice from trial counsel's failure to personally investigate Nas as a witness.  Thus, the Delaware Supreme Court's denial of Claim Two was based on a reasonable application of *Strickland*.

### 3.     Claim Three

In Claim Three, Petitioner contends that trial counsel was ineffective for not requesting a *Lolly*[6] missing evidence instruction based on the State's failure to collect the stolen cigarette pack the robber tossed into the street after taking it from Buchanan at gunpoint, because the pack might have contained material evidence of the robber's identity in the form of DNA or fingerprints. (D.I. 2 at 8).  As explained by the Delaware Supreme Court when affirming the denial of Petitioner's Rule 61 motion, a *Lolly* missing evidence instruction "tells the jury, in a case where the State has failed to collect or preserve evidence which is material to the defense, to assume that the missing evidence would have tended to prove the defendant not guilty."  *Rosser*, 2019 WL 5576888, at *2.  In other words, a "missing evidence instruction . . . requires the jury [to] infer that, had the evidence been preserved, it would have been exculpatory to the defendant."  *McCrey v. State*, 941 A.2d 1019 (Table), 2008 WL 187947, at *2 (Del. 2008).  The Delaware Supreme Court concluded that defense counsel's failure to request a *Lolly* missing evidence instruction did not amount to ineffective assistance, opining:

> [Petitioner] has not overcome the strong presumption of reasonable representation or demonstrated actual prejudice concerning this claim, because he has not shown that the cigarette package was

---

[6]     *Lolly v. State*, 611 A.2d 956 (Del. 1992).

> material to his guilt or innocence.  "Evidence is material only if there
> is a reasonable probability that it will affect the result of the
> proceeding."  In *Lolly*, the police failed to collect blood that was left
> behind when a burglar entered a residence through a booby-trapped
> window; there were no eyewitnesses to the burglary and the blood
> likely would have contained evidence material to the identification
> of the perpetrator.  In this case, in contrast, the victim identified
> [Petitioner] as the perpetrator, and it is mere speculation that the
> cigarette pack might have provided any evidence regarding the
> robber's identity.

*Rosser*, 2019 WL 5576888, at *3.

Petitioner has not provided any evidence to rebut the Delaware Supreme Court's determination that his contention about the possible material evidence that may have been recovered from the cigarette pack was pure speculation.  Considering the speculative nature of the cigarette pack's evidentiary value in conjunction with the victim's identification of Petitioner as the assailant demonstrates that Petitioner cannot establish a reasonable probability that the result of his trial would have been different but for trial counsel's failure to pursue a missing evidence instruction.  Therefore, the Court will deny Claim Three for failing to satisfy § 2254(d).

### D.    **Pending Motion**

Petitioner filed a letter Motion for an Evidentiary Hearing (D.I. 17) for all of his ineffective assistance of counsel Claims.  Having determined that the Claims are either procedurally barred or lack merit, the Court will dismiss the Motion as moot.

## IV.    **CERTIFICATE OF APPEALABILITY**

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability.  *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2).  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2);

*see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  In addition, when a district court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief.  Reasonable jurists would not find this conclusion to be debatable.  Accordingly, the Court will not issue a certificate of appealability in this case.

## V.   <u>CONCLUSION</u>

For the reasons discussed, the Court will deny the instant Petition and deny as moot Petitioner's Motion for an Evidentiary Hearing without issuing a certificate of appealability.  The Court will enter an Order consistent with this Memorandum Opinion.